166 P.3d 677 (2007)
In the Matter of the Personal Restraint of Daniel C. MULHOLLAND, Respondent.
No. 79150-3.
Supreme Court of Washington, En Banc.
Argued March 15, 2007.
Decided August 30, 2007.
*679 Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Petitioner.
Christopher Gibson, Nielsen Broman & Koch PLLC, Seattle, WA, for Respondent.
ALEXANDER, C.J.
¶ 1 A Pierce County jury found Daniel Mulholland guilty of six counts of first degree assault and one count of drive-by shooting. The jury also determined that Mulholland was armed with a firearm during each of the assaults. The trial court thereafter ordered Mulholland's first degree assault sentences to be served consecutively, concluding that it was without discretion to impose concurrent sentences for separate serious violent offenses. Mulholland later filed a personal restraint petition (PRP) with the Court of Appeals. That court granted the petition, determining that the "trial court erred in concluding that it had no discretion" to impose concurrent sentences for the assaults as an exceptional sentence. Order Granting Petition, In re Pers. Restraint of Mulholland, No. 34484-0-II, at 3 (Wash.Ct.App. July 24, 2006). We granted the State's petition for review and now affirm the Court of Appeals.

I
¶ 2 Mulholland was charged in Pierce County Superior Court with six counts of first degree assault with a firearm and one count of drive-by shooting. The evidence produced at trial demonstrated that in November 2001, Mulholland visited the Tacoma home of Jeannine Tullar. During an encounter outside that home, Mulholland threatened Joshua Tullar, Jeannine Tullar's grandson, indicating that he would retaliate for a television set that was allegedly taken by Joshua's uncle. Later that evening, a series of gunshots were fired at the Tullar home while six people were eating dinner inside.
¶ 3 One of Jeannine Tullar's neighbors identified Mulholland's van as being in the vicinity of Tullar's home at the time the gunshots were fired. Tacoma police officers recovered three shell casings at the scene and later matched them to shell casings they found in Mulholland's van. When questioned by Tacoma police officers, Mulholland admitted that he had been at the Tullar residence earlier in the day and had asked about a television set. He denied being responsible for the shooting, however, saying that he had been buying his wife jewelry at the time of the shooting. Although Mulholland offered a receipt to confirm his alibi, the receipt related to a purchase that had been made two weeks before the shooting.
¶ 4 A jury found Mulholland guilty of the six first degree assault charges and made a special finding that he was armed with a firearm during each assault. He was also found guilty of the drive-by shooting charge. First degree assault is a "`[s]erious violent offense.'" RCW 9.94A.030(41)(a)(v). Under RCW 9.94A.589(1)(b), sentences for multiple serious violent offenses "shall be served consecutively to each other." Mulholland argued to the trial court that, notwithstanding the provisions of (1)(b), his sentence for the assaults should be served concurrently pursuant to RCW 9.94A.589(1)(a), on the basis that the assaults constituted the "`[s]ame criminal conduct.'" The trial court rejected Mulholland's argument because there were six different victims of the assaults. Consequently, it imposed consecutive sentences for each assault. In doing so, it concluded that it did not "have the discretion to" run the assault sentences "at the same time." Pers. Restraint Pet., App. H at 588.[1] The trial court imposed a sentence of 927 months.[2]
¶ 5 Mulholland appealed to Division Two of the Court of Appeals, which affirmed. State *680 v. Mulholland, noted at 121 Wash.App. 1081, 2004 WL 1303160 (2004). He thereafter filed a timely PRP in that court, asserting that he "was deprived of his constitutional right to effective assistance of counsel" because his counsel "fail[ed] to request an exceptional sentence below the standard range." Pers. Restraint Pet. at 8. He also claimed that the trial court abused its discretion by "fail[ing] to recognize" its authority to impose such a sentence. Id. The Court of Appeals granted his PRP, concluding that the trial court erred in determining it was without discretion to impose a mitigated exceptional sentence.
The State filed a petition for review with this court, asserting that the Court of Appeals did not use the "standards set forth for determining" a PRP. Pet. for Review at 5. The State argued that Mulholland's PRP must be viewed as a collateral attack on the judgment and sentence and that, therefore, he must show a "`fundamental defect which inherently results in a complete miscarriage of justice'" to proceed. Pet. for Review at 6 (quoting In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)). Mulholland asserts the trial court's failure to recognize that it had discretion to impose the concurrent sentences as an exceptional sentence is a fundamental defect. We granted the State's petition.

II
¶ 6 We are confronted with two questions: (1) does a sentencing court have discretion to impose concurrent sentences for separate serious violent offenses as an exceptional sentence; and (2) if it does possess such discretion, was the failure of the sentencing court to recognize that it had such discretion a basis for granting Mulholland's PRP?

III

A
¶ 7 As we have noted above, each of the six assaults that Mulholland committed is a serious violent offense and sentences for such offenses "shall be served consecutively to each other." RCW 9.94A.589(1)(b). The question with which we are confronted is whether, notwithstanding the language of this statute, a sentencing court may order that multiple sentences for serious violent offenses run concurrently as an exceptional sentence if it finds there are mitigating factors justifying such a sentence. This is a question we have not directly addressed.
¶ 8 In concluding that the sentencing court possessed the discretion to impose concurrent sentences for separate serious violent offenses, the Court of Appeals relied upon the language of RCW 9.94A.535. It provides, "A departure from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in this section, and may be appealed by the offender or the state as set forth in RCW 9.94A.585 (2) through (6)." RCW 9.94A.535. The Court of Appeals focused on the fact that this statute does not differentiate between RCW 9.94A.589(1)(a) and (1)(b), and instead, refers broadly to the provisions of RCW 9.94A.589(1). Noting the absence of a distinction between the subsections, the Court of Appeals determined that sections (1)(a) and (1)(b) of RCW 9.94A.589 are treated similarly under RCW 9.94A.535 and concluded, therefore, that if mitigating circumstances are present, concurrent sentences may be imposed by the sentencing court as an exceptional sentence. Consequently, it determined that the sentencing court erred in holding it was without discretion to impose concurrent sentences on the assault convictions.
¶ 9 In support of its contention that the Court of Appeals was incorrect, the State argues that the focus should be on the text of RCW 9.94A.589(1), as opposed to RCW 9.94A.535. Specifically, the State asserts that there is a critical difference between subsections (1)(a) and (1)(b) of RCW 9.94A.589 in that only one of the subsections, (1)(a), refers back to RCW 9.94A.535.[3]See Pet. for Review *681 at 14-15. That subsection expressly provides that sentences imposed under it should run concurrently and that exceptional sentences "may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a). In contrast, (1)(b), the section under which Mulholland was sentenced, requires sentences for separate serious violent offenses to be served consecutively. It does not, the State points out, have a similar reference back to the exceptional sentence provisions of RCW 9.94A.535. The State reasons that the proper inference to draw from the omission in RCW 9.94A.589(1)(b) of a reference to RCW 9.94A.535 is that the legislature did not intend the exceptional sentence statute to apply when the sentencing is under (1)(b) because "`each word of a statute is to be accorded meaning.'" Pet. for Review at 13-14 (quoting State ex. rel. Schillberg v. Barnett, 79 Wash.2d 578, 584, 488 P.2d 255 (1971)).
¶ 10 In our judgment, the State's argument fails because it pays too little heed to the plain language of RCW 9.94A.535. As we have observed above, it provides that exceptional sentences may be imposed when sentencing takes place under RCW 9.94A.589(1). Because it does not differentiate between subsections (1)(a) and (1)(b), it can be said that a plain reading of the statute leads inescapably to a conclusion that exceptional sentences may be imposed under either subsection of RCW 9.94A.589(1).
¶ 11 Mulholland's interpretation of the relevant statutes is further supported by the fact that RCW 9.94A.535 permits the defendant or the State to appeal a sentence that departs from the standards governing concurrent and consecutive sentences. It provides that "[a] departure from the standards in RCW 9.94A.589 (1) . . . may be appealed by the offender or the state." RCW 9.94A.535 (emphasis added). This is instructive because it illustrates that the State may be the aggrieved party when an exceptional sentence is imposed under RCW 9.94A.589(1). The State would be the aggrieved party only if concurrent sentences are imposed where consecutive sentences are presumptively called for, as they would be if a defendant, like Mulholland, was sentenced under (1)(b).
¶ 12 The State argues that Mulholland's interpretation of the relevant statutes is inconsistent with State v. Flett, 98 Wash.App. 799, 992 P.2d 1028 (2000). We disagree. In Flett, the defendant was found guilty of four counts of assault in the first degree. The jury found, additionally, that Flett was armed with a firearm during each assault. The issue presented to the Court of Appeals was whether the sentencing court erred in ordering the firearm enhancements to be served concurrently. The Court of Appeals concluded that the trial court did err because former RCW 9.94A.310(3)(e) (1998) explicitly required it to order the firearm enhancement sentences run consecutive to each other.[4] *682 Inexplicably, the Court of Appeals went on to note that Flett's first degree assault sentences are "required to be consecutively sentenced." Flett, 98 Wash.App. at 806, 992 P.2d 1028. The State argues that the Court of Appeals' reference to Flett's first degree assault sentences should influence our decision here. We disagree, concluding that the Court of Appeals' reference to Flett's assaults did not bear upon its holding. That is so, because Flett, unlike Mulholland, did not challenge the sentences for his assaults. Therefore, the Flett court's comment on assault sentences is dicta. See State v. Halgren, 137 Wash.2d 340, 346 n. 3, 971 P.2d 512 (1999) (noting that comments that do not bear upon the outcome of a case are dicta).[5] Thus, while there is language in Flett that, apparently, provided encouragement for the State's position, the language is dicta and does not stand up to a plain reading of the statutes at issue here.
¶ 13 In sum, the plain language of RCW 9.94A.589(1) and RCW 9.94A.535 support the Court of Appeals' determination that the trial court had the discretion to impose an exceptional sentence.

B
¶ 14 The State goes onto argue that even if the Court of Appeals was correct in concluding that the trial court possessed discretion to impose concurrent sentences here, the Court of Appeals nevertheless did not apply the proper standards in reviewing Mulholland's PRP. In reviewing a PRP, the appellate court must determine if "(1) [the defendant] was actually and substantially prejudiced by a violation of his constitutional rights; or (2) `that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004) (quoting Cook, 114 Wash.2d at 812, 792 P.2d 506). If a petitioner is claiming a constitutional error, he or she has the burden of demonstrating the former; and if a nonconstitutional error is claimed, the petitioner has the burden of demonstrating the latter. Thus, a higher burden is upon the petitioner who files a PRP rather than a direct appeal, where upon a showing of constitutional error by the petitioner, the State has the burden of showing that it was harmless beyond a reasonable doubt. State v. Brown, 147 Wash.2d 330, 338-40, 58 P.3d 889 (2002).
¶ 15 The State argues that "there is nothing in the Court of Appeals's order [granting Mulholland's PRP] to show that these heightened standards were employed [by the court]," and as a result, the Court of Appeals erred in granting his petition. Suppl. Br. of Pet'r at 5. We disagree.
¶ 16 The Court of Appeals determined that there was a nonconstitutional (i.e., statutory) error. This is evident from a review of its order granting Mulholland's PRP. As discussed above, the Court of Appeals analyzed the relevant sentencing statutes and concluded that the trial court was incorrect when it concluded that it did not have the discretion to impose an exceptional sentence. In a footnote, the Court of Appeals indicated, additionally, that its decision was premised upon nonconstitutional grounds. Furthermore, nothing in the order indicates relief was granted in response to a constitutional error by the trial court.
¶ 17 We have held that "to receive collateral review of a conviction on nonconstitutional grounds, a petitioner must establish that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cook, 114 Wash.2d *683 at 812, 792 P.2d 506. The error in this case was the trial court's failure to recognize that it had the discretion to impose a mitigated exceptional sentence. In our view, the trial court's incorrect interpretation of the statutes that applied to the assault sentences is a fundamental defect.
¶ 18 In reaching this conclusion, we are guided by the application of this standard in other sentencing contexts. We have found a fundamental defect resulting in a complete miscarriage of justice when the trial court had an incorrect understanding of the low end of the standard range for sentencing the defendant. In re Pers. Restraint of Johnson, 131 Wash.2d 558, 568-69, 933 P.2d 1019 (1997). In Johnson, we reached this decision despite the fact that the trial court imposed a sentence that fell within the correct standard sentencing range. It was the incorrect understanding of the applicable sentencing laws, rather than the sentence imposed, that was a fundamental defect. We have also found a fundamental defect when "the petitioners are likely to spend substantially more time in DOC [Department of Corrections] custody than their sentences should allow." In re Pers. Restraint of Tran, 154 Wash.2d 323, 332, 111 P.3d 1168 (2005). Furthermore, we have held, albeit not in the context of a PRP, that "[t]he failure to consider an exceptional sentence is reversible error." State v. Grayson, 154 Wash.2d 333, 342, 111 P.3d 1183 (2005) (citing State v. Garcia-Martinez, 88 Wash.App. 322, 330, 944 P.2d 1104 (1997)).
¶ 19 Here, the trial court sentenced Mulholland while possessed of a mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which he may have been eligible. This error is particularly significant because the trial court made statements on the record which indicated some openness toward an exceptional sentence, expressing sympathy toward Mulholland because of his former military service.[6] Addressing Mulholland, the trial court noted:
Mr. Mulholland, I know that this incident has impacted your family tremendously and it's impacted you, and I can't ignore what you gave to this country. It's a sacrifice to serve in the military and we  that's important and we recognize that. But when I'm looking at the counts and what the jury decided, I don't have discretion to do anything but follow the law. I don't have the discretion to have the sentences in my view run at the same time.
Pers. Restraint Pet., App. H at 587-88.
¶ 20 The record does not show that it was a certainty that the trial court would have imposed a mitigated exceptional sentence if it had been aware that such a sentence was an option. Nonetheless, the trial court's remarks indicate that it was a possibility. In our view, this is sufficient to conclude that a different sentence might have been imposed had the trial court applied the law correctly. Where the appellate court "cannot say that the sentencing court would have imposed the same sentence had it known an exceptional sentence was an option," remand is proper. State v. McGill, 112 Wash.App. 95, 100-01, 47 P.3d 173 (2002). As we said in Grayson, "[w]hile no defendant is entitled to an exceptional sentence . . ., every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." Grayson, 154 Wash.2d at 342, 111 P.3d 1183 (citing Garcia-Martinez, 88 Wash.App. at 330, 944 P.2d 1104).

C
¶ 21 Finally, we address the State's contention that even if Mulholland serves concurrent sentences instead of consecutive sentences, it will have no meaningful effect. The State asserts that a mitigated exceptional sentence for Mulholland would be 600 months, or 50 years, and that because of his age (he was 55 at sentencing) there is no possibility he will survive such a sentence. The State cites to In re Personal Restraint of Grisby, 121 Wash.2d 419, 853 P.2d 901 (1993), in support of its position that a PRP should be denied if no meaningful relief is available to the petitioner. In Grisby, the *684 petitioner's PRP was denied, in part, because Grisby, even if successful, could  at best  show that his sentence would be reduced from life in prison to a minimum term of 200 years.
¶ 22 Grisby does not control our analysis here. In contrast to Grisby, the Court of Appeals' decision to grant Mulholland's PRP may provide meaningful relief. If Mulholland's sentences on the assaults are ordered to run concurrently, his total sentence would be 462 months, or 38.5 years.[7] While it is possible that Mulholland will die before he serves the sentence, that is not a certainty.

IV
¶ 23 We affirm the Court of Appeals decision to grant Mulholland's personal restraint petition and remand for resentencing.
WE CONCUR: TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, JAMES M. JOHNSON and BOBBE J. BRIDGE, Justices.
NOTES
[1] After addressing, and rejecting, Mulholland's "same criminal conduct argument," the trial court said: "So I don't believe there is any discretion that this court has with regard to running the sentences concurrent [sic]. I think the law requires me to run them consecutive [sic]. I don't believe there's any discretion that this court has in that regard." Pers. Restraint Pet., App. H at 582.
[2] The trial court imposed five 93 month sentences and one 102 month sentence for the six assaults, each with an additional 60 month firearm enhancement. The sentences were to be served consecutively. The trial court also imposed an 87 month sentence for the drive-by shooting conviction and ordered it to be served concurrently. In sum, Mulholland received a total sentence of 927 months.
[3] RCW 9.94A.589(1)(a) and (1)(b) provide:

"(1)(a) Except as provided in (b) or (c) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. `Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition applies in cases involving vehicular assault or vehicular homicide even if the victims occupied the same vehicle.
"(b) Whenever a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, the standard sentence range for the offense with the highest seriousness level under RCW 9.94A.515 shall be determined using the offender's prior convictions and other current convictions that are not serious violent offenses in the offender score and the standard sentence range for other serious violent offenses shall be determined by using an offender score of zero. The standard sentence range for any offenses that are not serious violent offenses shall be determined according to (a) of this subsection. All sentences imposed under (b) of this subsection shall be served consecutively to each other and concurrently with sentences imposed under (a) of this subsection."
[4] The Court of Appeals drew attention to the clear requirement for consecutive sentences under former RCW 9.94A.310(3)(e). The court noted that the statute provided:

"`(e) Notwithstanding any other provision of law, any and all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.'" Flett, 98 Wash.App. at 806 n. 1, 992 P.2d 1028 (quoting LAWS of 1998, ch. 235, § 1).
[5] Were our decision here to be controlled by the dicta of lower court decisions, State v. Hale, 65 Wash.App. 752, 829 P.2d 802 (1992) would be applicable. In that case, the Court of Appeals found that concurrent sentences may be imposed where consecutive sentences are standard. The trial court concluded that mandatory minimums were applicable to attempted first degree murder convictions, and the Court of Appeals reversed after finding that the sentences could be run concurrently as a mitigated exceptional sentence. But, as the State points out, "[i]t was not necessary to the decision to address whether concurrent sentences could or could not be imposed lawfully upon remand" and thus, "Hale is inapposite." Suppl. Br. of Pet'r at 11-12. The same is true in regard to Flett.
[6] One of the shooting victims, Jeannine Tullar, also addressed the court to express her empathy with Mulholland and the effect military service had on him.
[7] The State argues that Mulholland's sentence could be reduced to a minimum of 720 months upon resentencing. The State calculates that Mulholland must serve 360 months for his consecutive firearm enhancements (which he does not dispute) and 360 months for consecutive sentences on his assault convictions. This calculation assumes, however, that the assault convictions cannot be served concurrently. The State's Grisby argument begs the question in assuming that no meaningful relief is available to Mulholland, as we granted review to determine if the assault convictions could be sentenced concurrently.