## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

March 8, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 52119-9-II |
| ASARIA JUSTICE MILLER, | |
| Petitioner, | PUBLISHED OPINION |

PRICE, J. — Asaria J. Miller brings this personal restraint petition (PRP), arguing that she is entitled to resentencing under *State v. Houston-Sconiers*[1] because the sentencing court did not meaningfully consider mitigating factors related to her youth at sentencing. We grant Miller's petition and order a resentencing.

### FACTS

In 2012, Miller, a 16-year-old Black girl, and her boyfriend killed her father's ex-girlfriend. Although Miller's father was not present at the time of the murder, he recruited her to carry out the act. Miller was charged with first degree burglary with a firearm enhancement, conspiracy to commit first degree murder, and first degree murder with a firearm enhancement.

Miller reached an agreement with the State whereby, in exchange for her cooperating, testifying, and pleading guilty, the State amended the charges against her and recommended a mid-range sentence. Miller's father and boyfriend were both convicted of the murder.

---

[1] 188 Wn.2d 1, 391 P.3d 409 (2017).

No. 52119-9-II

Miller pled guilty in 2013 to the amended charge of first degree murder with a firearm sentencing enhancement. The same judge who presided over the prosecutions of Miller's father and boyfriend presided over her sentencing.

Miller had an offender score of 3 due to a prior conviction of first degree assault. Based on Miller's offender score, the standard range for first degree murder was 271 to 361 months. The State and defense counsel both recommended a sentence of 300 months for first degree murder, plus 60 months for the firearm enhancement, for a total of 360 months.

When explaining the recommendation, Miller's defense counsel briefly mentioned Miller's youth:

> There are a lot of reasons why [the sentencing court] should not go to the high end, other than just the facts of the case itself. When I first learned about this case, and then the more I got into it, I was sort of blown away by the facts of this case in the sense that it was unbelievable and inconceivable to me that not only would a father talk to his daughter about killing his girlfriend/ex-wife, whatever she was, but would actually recruit her to help do it, and ultimately to find somebody to do it. And then not only carry it out with his daughter, but then come to court and try to shift the blame onto his daughter. Oh, it was all her idea. Well that's ridiculous, and it's offensive.
>
> She was 16 at the time and pregnant. She does have a prior assault. Again, and, I—I almost am reluctant to say this, but that was—also involved her as an accomplice with older individuals. She and another girl, I think, were the only two juveniles. The rest of the people that were convicted of that, including the person who actually did it, were adults.

Suppl. Pet., App. A at 17-18. Defense counsel also described the action as a "whim [ ] of a 16 year old." *Id.* at 18. No additional statements regarding Miller's youth were made at sentencing.

The sentencing court rejected the joint recommendation and imposed a total sentence of 390 months, 30 months greater than the recommendation.

2

No. 52119-9-II

In explaining its decision, the sentencing court noted that during Miller's testimony at her father's trial, Miller had said that her father had asked for her assistance with the murder because of her history of a prior assault. The sentencing court stated that it believed there may have been some pride in that statement. It also noted that Miller and her father had justified the murder to each other by saying, "Millers don't get beat down." *Id.* at 21. The sentencing court briefly referenced Miller's youth in its decision, saying:

> [I]n taking into consideration of all the factors the parties have said, and the consideration that [] Miller, at the age of 16, committed a violent offense, having already committed a violent offense, has now set her life. Most young people's lives aren't set in stone by the time they are 17 years old. Yours is.

*Id.*

More than one year after her conviction and sentence became final, Miller filed a CrR 7.8 motion for relief from judgment that was transferred to this court as a PRP.

ANALYSIS

I. UNLAWFUL RESTRAINT

A. LEGAL PRINCIPLES

Generally, petitioners have only one year from the date their judgment becomes final to bring a PRP. RCW 10.73.090. Petitions filed after the one-year mark are time barred unless an exception applies. RCW 10.73.100.

A petitioner can overcome the one-year time bar if they can identify (1) a significant change in the law (2) that is material to the conviction or sentence and (3) that applies retroactively. RCW 10.73.100(6); *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). Additionally, to obtain relief in a PRP, the petitioner must also show actual and substantial prejudice resulting from the

3

No. 52119-9-II

alleged constitutional errors by a preponderance of the evidence. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). A petitioner " 'must shoulder the burden of showing, not merely that errors at [their] trial created a *possibility* of prejudice,' but that the outcome would more likely than not have been different had the alleged error not occurred." *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)).

In *Houston-Sconiers*, our Supreme Court held that when sentencing juveniles, the Eighth Amendment requires courts to consider the " 'hallmark features' " of youth and have discretion to impose a sentence below the standard range. 188 Wn.2d 1 at 23 (quoting *Miller v. Alabama*, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 407 (2012)).

Following *Houston-Sconiers*, our Supreme Court held that "a petitioner [seeking relief under *Houston-Sconiers*] establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration." *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020). "Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile." *Id.* Where a petitioner establishes actual and substantial prejudice, we will remand for resentencing. *Id.* at 268-69.

The hallmark features of youth include a juvenile's " 'immaturity, impetuosity, and failure to appreciate risks and consequences,' " along with "the nature of the juvenile's surrounding

4

No. 52119-9-II

environment and family circumstances, the extent of the juvenile's participation in the crime, and 'the way familial and peer pressures may have affected [them].' " *Houston-Sconiers*, 188 Wn.2d at 23 (alteration in original) (quoting *Miller*, 567 U.S. at 477). Trial courts must also examine factors that indicate a likelihood of rehabilitation and the impact of youth on the juvenile's legal defense. *Id.*

B. APPLICATION

Miller argues she is entitled to resentencing under *Houston-Sconiers*. It is well-established that *Houston-Sconiers* was a significant change in the law that is retroactively applicable and material to cases such as Miller's where juveniles were sentenced as adults. *Domingo-Cornelio*, 196 Wn.2d at 262-65. Thus, Miller's petition is not time barred. Therefore, the question here is whether Miller has made a showing of actual and substantial prejudice arising from a constitutional error that entitles her to a resentencing. We determine that she has.

As Miller capably presented at oral argument, the sentencing court did not meaningfully consider Miller's youth at her sentencing because the sentencing court was not presented with facts or arguments related to the mitigating qualities of Miller's youth. Although Miller's age was mentioned, there was no direct reference to her maturity or ability to appreciate the consequences of her actions. Moreover, the sentencing court did not consider factors related to Miller's surrounding environment and family circumstances. Although it could be argued that defense counsel implied that Miller was influenced by family pressures and was impetuous, counsel did not directly argue the mitigating qualities of Miller's youth. And although the sentencing court referenced Miller's age once, noting that most individuals' lives are not set in stone at such a young age, this sole reference is not enough to show that it meaningfully considered the mitigating factors

5

No. 52119-9-II

of Miller's youth. Because facts related to the mitigating qualities of Miller's youth were neither presented nor discussed at her sentencing, the sentencing court cannot be said to have meaningfully considered her youth.[2]

The sentencing court's failure to meaningfully consider Miller's youth at her sentencing, resulted in actual and substantial prejudice to Miller. And it is more likely than not that Miller would have received a lesser sentence had the sentencing court complied with *Houston-Sconiers*. Because Miller was actually and substantially prejudiced, we find that she is entitled to relief by this PRP.[3]

## II. REQUESTED STANDARD OF "PER SE PREJUDICE"

Miller and amicus curiae also argue that we should apply a standard of "per se prejudice" or presumptive prejudice to juvenile resentencing cases because certain groups of children, particularly Black girls, receive disparate treatment during sentencing.[4] Miller and amicus curiae maintain that the standard of per se prejudice should be used because Black children do not receive meaningful consideration of youth at sentencing as compared to their white counterparts. They also argue that the standard of per se prejudice should apply because Miller is required to prove

---

[2] We acknowledge that it would have been difficult for the sentencing court to adequately consider Miller's youth because the law around juvenile sentencing has evolved dramatically since Miller was sentenced in 2013. *See State v. O'Dell*, 183 Wn.2d 680, 688-89, 358 P.3d 359 (2015); *Houston-Sconiers*, 188 Wn.2d at 19-20.

[3] Although Miller's sentence was the result of a plea agreement, we note that the State confirmed at oral argument that it would not accuse Miller of breaching the plea agreement if the matter were remanded for resentencing to address the mitigating factors of youth.

[4] Miller also argues that the standard of per se prejudice should apply more broadly to children of color.

No. 52119-9-II

actual and substantial prejudice from the sentencing court's failure to consider her youth, a high barrier, especially considering that the sentencing court was not initially required to consider youth.

Amicus curiae argues that it is well-established by empirical literature and has been acknowledged by our Supreme Court that Black children are prejudiced by, in addition to other stereotypes, "adultification" or the tendency of society to view Black children as older than similarly aged youths. This results in harsher punishments for Black children in the criminal justice system. Additionally, Black girls are also prejudiced by gender bias, further creating a punitive discrepancy between Black girls and their peers. Amicus curiae argues that the superior court demonstrated adultification bias at Miller's sentencing when the judge noted the "hint of pride" in Miller's testimony and told her, "Most young people's lives aren't set in stone by the time they are 17 years old. Yours is." Suppl. Pet., App. A at 20-21.

Amicus curiae also argues that a conclusive presumption of prejudice should apply in cases such as this one where a *Miller*[5] hearing has not occurred because that is an error implicating a core constitutional procedural right. They argue that a conclusive presumption of prejudice was effectively recognized in *Domingo-Cornelio* because the rule articulated in that case was "functionally equivalent to a per se prejudice rule." Br. of Amicus Curiae at 18.

We agree that adultification may detrimentally affect children of color at criminal sentencings. In a recent, comprehensive study of bias in the justice system, Washington's Gender and Justice Commission explained that studies involving justice officials, as well as studies

---

[5] *Miller*, 567 U.S. 460.

7

No. 52119-9-II

involving the general population, "have shown that girls of color are perceived differently than white girls." GENDER & JUSTICE COMM'N, WASH. COURTS, 2021: HOW GENDER AND RACE AFFECT JUSTICE NOW at 453 (Sept. 2021),[6] For example, compared with their white counterparts, "Black girls are seen as more adult, needing less protection and nurturing, and being more knowledgeable about sex; and juvenile offenders of color are seen as more blameworthy and deserving of harsher punishment." *Id*.

> [A] nationally-representative survey of white Americans found that when primed to think about Black juvenile offenders, participants were more likely to support the most severe penalty of life without parole in non-homicide cases as compared to priming for a white juvenile offender; and participants perceived youth as more similar to adults in blameworthiness when primed to think of Black juvenile offenders than white juvenile offenders.

*Id.* at 453 n.97. In Washington, Indigenous and Black girls were overrepresented in juvenile detention in every county with populations high enough to report in 2019. *Id.* at 456.[7] Thus, we recognize that adultification is real and can lead to harsher sentences for children of color if care is not taken to consciously avoid biased outcomes.

Notwithstanding our agreement that courts at all levels must remain vigilant when sentencing Black, Indigenous, and children of color to avoid the real bias that has long plagued our justice system, it remains that actual and substantial prejudice is the established standard to be followed by this court. Neither Miller nor amicus curiae offer an example of a *Miller* resentencing

---

[6] https://www.courts.wa.gov/subsite/gjc/documents/2021_Gender_Justice_Study_Report.pdf.

[7] In 2019, Black girls were 4.9 percent of the female youth population in Washington, but 14.6 percent of the female juvenile detention admissions.

2021: HOW GENDER AND RACE AFFECT JUSTICE NOW, *supra*, tbl.1, at 455.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 52119-9-II

where a standard other than actual and substantial prejudice has been applied. Creating a new standard, however desirable from a policy perspective, would require us to depart from clearly established standards for PRPs. We decline to do so.

Nevertheless, in the face of this convincing information about disparities in sentencing, trial courts should consider, in addition to issues common with all youths set forth in *Houston-Sconiers*, these potential biases when sentencing children of color.

CONCLUSION

We grant Miller's petition and order resentencing consistent with *Houston-Sconiers*.

PRICE, J.

We concur:

GLASGOW, A.C.J.

WORSWICK, J.

9