# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52538-1-II |
| Respondent. | |
| vs. | UNPUBLISHED OPINION |
| JAMAL DESHAUN SMITH, | |
| Appellant. | |

MAXA, P.J. – Jamal Smith appeals the imposition of a 60-month firearm enhancement as part of the sentence for his conviction of attempted first degree murder, committed when he was 17 years old. In a statement of additional grounds (SAG), Smith challenges other aspects of the sentence for this conviction as well as other convictions sentenced at the same time.

We hold that (1) defense counsel's recommendation that the trial court impose a mandatory firearm enhancement rather than asking the trial court to waive the enhancement did not constitute ineffective assistance of counsel; (2) the trial court did not fail to exercise its discretion to consider youth as a mitigating factor in imposing the firearm enhancement; and (3) the trial court erred in imposing an indefinite term of community custody regarding Smith's two attempted first degree murder convictions, as the State concedes, but Smith's other SAG claims lack merit.

Accordingly, we affirm Smith's sentence, but we remand for the trial court to strike the indefinite term of community custody on the two attempted first degree murder convictions from the judgment and sentence and impose three years of community custody on those counts.

FACTS

In February 2003, at age 17, Smith shot Jason Fonder in the face as part of a failed drug deal. Fonder survived. The State charged Smith with attempted first degree murder, first degree robbery, possession of marijuana, and unlawful possession of a firearm.

In 2004, the day before Smith's trial was set to begin, Smith (then age 19) facilitated a break-in at Fonder's home with the intent to kill Fonder to prevent him from testifying. The State charged Smith with another count of attempted first degree murder and residential burglary.

Smith was convicted of all charges. He was sentenced to 562 months, plus a 60-month firearm enhancement on the first attempted murder charge, a 60-month firearm enhancement on the robbery charge, and an 18-month firearm enhancement on the possession of marijuana charge, for a total of 700 months in prison.

In 2017, this court granted Smith's personal restraint petition, reversed his sentence, and remanded to the trial court for resentencing. The court held that under *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), "the trial court erred when it concluded that it was constrained to impose the mandatory firearm enhancements as well as the serious violent offense consecutive sentencing provisions. Consequently, the trial court did not adequately consider mitigating circumstances associated with [Smith's] youth." *In re Pers. Restraint of Smith*, No. 49127-3-II (consolidated with No. 49257-1-II), slip op. at 8 (Wash. Ct. App. Aug. 29, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2049127-3-II%20Unpublished%20Opinion.pdf.

2

A resentencing hearing took place in October 2018. Dr. Harry Dudley, a psychologist who had evaluated Smith, testified that at the time of the offenses Smith was "very present-centered, focused on survival," more so than most adolescents, and engaged in risk-taking behavior associated with his peers. Report of Proceedings (RP) (Oct. 1, 2018) at 32. Smith grew up in a chaotic home with domestic violence and substance abuse issues. He was physically and possibly sexually abused as a child. Dudley testified that the multiple traumas in Smith's childhood and his involvement with antisocial peers created a greater risk that he would engage in serious criminal behavior as an adolescent. But Dudley concluded that Smith had "a good potential for rehabilitation" as demonstrated by the progress he had made in prison, and that he was maturing. RP (Oct. 1, 2018) at 36.

Smith's sister testified that Smith grew up in a very violent home with chronic substance abuse and that he had been physically abused as a child. She also stated that Smith had matured and rehabilitated during his time in prison.

Smith had convictions on two serious violent offenses, two counts of attempted first degree murder. The trial court calculated Smith's offender score at 11, with a standard range of 308.25 to 411 months, for each attempted first degree murder conviction.

The State recommended a sentence of 622 months, which included a 60-month firearm enhancement on the first attempted murder charge committed when Smith was 17. Defense counsel recommended that the court impose 180 months and a 60-month firearm enhancement.

The trial court imposed 280 months on each of the two attempted first degree murder convictions, running concurrently. And the court imposed a 60-month firearm enhancement on

the first attempted first degree murder conviction, committed when Smith was 17.[1] The court

did not impose a firearm enhancement on the first degree robbery conviction or a firearm

enhancement on the unlawful possession of marijuana conviction.

The trial court imposed an indefinite term of community custody of between 24 and 48

months on the two counts of attempted murder. The court also imposed the crime victim penalty

assessment and restitution.

Smith appeals his sentence.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Smith argues that he received ineffective assistance of counsel because defense counsel

recommended that the trial court impose a mandatory firearm enhancement rather than

requesting that the court waive the enhancement. We disagree.

1.    Standard of Review

The Sixth Amendment to the United States Constitution and article I, section 22 of the

Washington Constitution guarantee criminal defendants the right to effective assistance of

counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review ineffective

assistance of counsel claims de novo. *Id.*

To prevail on an ineffective assistance claim, the defendant must show both that (1)

defense counsel's representation was deficient and (2) the deficient representation prejudiced

him or her. *Id*. at 457-58. Representation is deficient if, after considering all the circumstances,

---

[1] The trial court imposed 171 months on the first degree robbery conviction, 60 months on the unlawful possession of marijuana conviction, 116 months on the unlawful possession of a firearm conviction, and 84 months on the residential burglary conviction, all running concurrently with each other and with the attempted first degree murder sentences.

it falls below an objective standard of reasonableness. *Id*. at 458. Prejudice exists if there is a reasonable probability that, except for counsel's error, the result of the proceeding would have been different. *Id*. It is not enough that ineffective assistance conceivably impacted the case's outcome; the defendant must affirmatively show prejudice. *Id*.

We begin our analysis with a strong presumption that defense counsel's performance was reasonable. *Id.* Defense counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Id.* To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.' " *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

2.    Analysis

As discussed in more detail below, the Supreme Court has held that because the Eighth Amendment gives more protections to children, sentencing courts must take a juvenile defendant's youthfulness at the time of the offenses into account. *Houston-Sconiers*, 188 Wn.2d at 9. Sentencing courts also "have absolute discretion to depart as far as they want below otherwise applicable SRA[2] ranges and/or sentencing enhancements when sentencing juveniles in adult court." *Id.*

Here, defense counsel recommended that the trial court impose 180 months and a 60-month firearm enhancement. This recommendation was 460 months less than the 700-month sentence the trial court originally imposed. And defense counsel advised the court,

> At the time of the sentencing in 2004, the parties believed . . . that the Court was bound to run the serious offenses consecutively, and the Court believed that it was bound to run the firearm enhancements consecutive[ly].

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

> As the Court knows, *the Court is not bound by those*. The Court can grant an exceptional sentence down, and . . . the defense is asking the Court to do that.

RP (Oct. 1, 2018) at 99.

Smith cannot demonstrate that defense counsel's recommendation of a single firearm enhancement was not strategic. Defense counsel successfully recommended that the court impose only one of the three firearm enhancements for which Smith was eligible. Smith faced potential firearm enhancements on three counts relating to offenses committed when he was 17: a 60-month enhancement on the first attempted first degree murder charge, a 60-month enhancement on the first degree robbery charge, and an 18-month enhancement on the unlawful possession of marijuana charge. Defense counsel's recommendation of a single 60-month enhancement considered the seriousness of the underlying offense while still representing a significant downward departure from the original sentence.

Even if defense counsel's recommendation constituted deficient performance, Smith cannot demonstrate that he was prejudiced by it. Defense counsel's overall recommendation of 240 months on all counts was significantly lower than the original sentence (700 months), the State's recommendation (622 months), and the sentence imposed by the trial court on resentencing (340 months). And the trial court expressly stated that

> even though I find that the Court is justified in an exceptional sentence downward, I cannot impose the sentence recommended by the defense. . . . [T]hese crimes were very serious and . . . Mr. Smith's culpability, while maybe less than originally thought . . . he is still culpable.

RP (Oct. 1, 2018) at 118. Smith cannot show that the outcome of the proceedings would have been different if his counsel had not recommended the single firearm enhancement.

Accordingly, we hold that Smith's ineffective assistance of counsel claim fails.

B.    EXERCISE OF DISCRETION REGARDING FIREARM ENHANCEMENT

Smith argues the trial court erred in failing to exercise its discretion to consider Smith's youth as a mitigating factor for the attempted first degree murder offense he committed when he was 17 and for that reason to refrain from imposing the 60-month firearm enhancement.  We disagree.

1.    Trial Court's Discretion in Sentencing Juveniles

The Eighth Amendment extends greater protection to juveniles.  *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 479-80, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (noting that "children are different" in support of holding mandatory life without parole sentences for juveniles unconstitutional); *Graham v. Florida*, 560 U.S. 48, 68-70, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (holding life-without-parole sentences for non-homicide offenses for juveniles unconstitutional).

Under *Houston-Sconiers*, sentencing courts have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant.  188 Wn.2d at 21. RCW 9.94A.533(3)(e)[3] provides that "all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions."  But in *Houston-Sconiers*, the court held that "[t]he mandatory nature of these [firearm] enhancements violates the Eighth Amendment protections" as applied to juveniles.  188 Wn.2d at 25-26.  The court also held that "sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court."  *Id.* at 9.

---

[3] RCW 9.94A.533 has been amended since the events of this case transpired.  Because these amendments are not material to this case, we do not include the word "former" before RCW 9.94A.533.

It is error for a trial court to categorically refuse to impose an exceptional sentence downward or to mistakenly believe that it does not have such discretion. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). Therefore, remand is the appropriate remedy when a trial court imposes a sentence without properly considering an authorized mitigated sentence. *Id.* at 58-59.

2.  Analysis

Under *Houston-Sconiers*, the trial court here had discretion to depart from "mandatory" firearm enhancements in light of Smith's youth. Smith faced potential firearm enhancements on three counts relating to offenses committed when he was 17: a 60-month enhancement on the first attempted first degree murder charge, a 60-month enhancement on the first degree robbery charge, and an 18-month enhancement on the unlawful possession of marijuana charge. The court imposed only one of the three firearm enhancements for which Smith was eligible. The fact that the court imposed only one of the two 60-month enhancements for class A felonies that Smith faced shows that the court understood its discretion under *Houston-Sconiers* to depart from "mandatory" firearm enhancements. *See* RCW 9.94A.533(3)(a).

Other indications from the record support this conclusion. The resentencing occurred as a result of this court's reversal of Smith's previous sentence and remand to the trial court to "consider the mitigating circumstances associated with Smith's youth" under *Houston-Sconiers*. *Smith*, No. 49127-3-II, slip op. at 8. And the prosecutor stated during his sentencing recommendation that "the rulings that have come down from the Supreme Court and the Court of Appeals give this Court *ultimate discretion* in regards to those firearm enhancements." RP (Oct. 1, 2018) at 90 (emphasis added).

The trial court concluded that "Smith's youth and traumatic childhood provide mitigating circumstances warranting a downward departure from the standard range sentence, particularly as applied to the convictions associated with the shooting on February 17, 2003." Clerk's Papers (CP) at 690. The court also stated that precedent from the United States Supreme Court and the Washington appellate courts "compel this court to fully consider the circumstances presented at this sentencing hearing." CP at 691.

Here, the trial court clearly considered Smith's youth, and balanced that factor with the seriousness of the offenses:

> [W]hen the Court considers these very, very serious acts for which Mr. Smith was convicted, *the Court must consider his youth*. The Court must consider the impact of that background, and it is certainly a sad situation for anyone in our community to grow up the way that Mr. Smith did.
>
> It does appear to me that, based upon the expert report and other documents, that Mr. Smith was *impaired in his decision making*, was impaired in the way that he made decisions about who he was going to be influenced by and what he did, and that appears to have been the case.
>
> And even though *I find that the Court is justified in an exceptional sentence downward*, I cannot impose the sentence recommended by the defense. The Court finds that these crimes were very serious and that Mr. Smith's culpability, while maybe less than originally thought by [the original sentencing court] without having all of this information, he is still culpable, and so the Court's overall sentence will be 280 months plus the 60 months of mandatory time.

RP (Oct. 1, 2018) at 117-18 (emphasis added).

Smith analogizes this case to *McFarland*, where the Supreme Court remanded for resentencing because the sentencing court "indicated some discomfort with his apparent lack of discretion . . . . [and] the record suggest[ed] at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so." 189 Wn.2d at 58-59.

But here, the record does not suggest the trial court did not properly understand its discretion regarding whether or not to impose the firearm enhancement or that it expressed discomfort with an apparent lack of discretion. The court never expressed any misgivings about imposing the single firearm enhancement or about Smith's overall sentence length.

Because the record does not contain any indication that the trial court misunderstood its discretion regarding the firearm enhancement, we hold that the trial court did not abuse its discretion by imposing the firearm enhancement.

C.    SAG CLAIMS

    1.    Offender Score Calculation

Smith asserts that his offender score on the second count of attempted first degree murder should have been zero under RCW 9.94A.589(1)(b). He claims that because his offender score instead was calculated at 11, his sentence was 40 months over the standard range on that count. We disagree.

Here, Smith had two serious violent offenses, two counts of attempted first degree murder. The first count arose from the original shooting when Smith was 17 and the second count arose from his subsequent attempt to kill Fonder to prevent him from testifying. Both offenses had a seriousness level of XV. On each count, the court calculated Smith's offender score at 11 with a standard range of 308.25 to 411 months.

The general rule is that sentences for multiple current offenses will run concurrently. RCW 9.94A.589(1)(a).[4] But RCW 9.94A.589(1)(b) provides an exception, stating that sentences

---

[4] RCW 9.94A.589 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 9.94A.589.

for "serious violent offenses arising from separate and distinct criminal conduct" must run

consecutively. RCW 9.94A.589(1)(b)'s special scoring procedure operates as follows:

> "1. Select the current serious violent offense with the highest seriousness level. Compute the offender score for this offense, using only prior offenses and other current offenses that are not serious violent offenses. In other words, ignore the other current serious violent offenses in computing the offender score.
>
> 2. Compute the sentencing range for the other current serious violent offenses, using an offender score of 0.
>
> 3. Run the sentences for the serious violent offenses consecutively.
>
> 4. Compute in the normal way the sentencing range for any current offenses that are not serious violent offenses. Run these sentences concurrently with the sentences for the serious violent offenses."

*State v. Breaux*, 167 Wn. App. 166, 171, 273 P.3d 447 (2012) (quoting 13B SETH FINE &

DOUGLAS ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3511, at 301 (2d ed. 1998)).

However, as discussed above, sentencing courts "have absolute discretion to depart as far

as they want below otherwise applicable SRA ranges and/or sentencing enhancements when

sentencing juveniles in adult court." *Houston-Sconiers*, 188 Wn.2d at 9. And a sentencing court

has express authority "to impose an exceptional downward sentence for serious violent offenses

by running presumptively consecutive sentences under RCW 9.94A.589(1)(b) concurrently

pursuant to RCW 9.94A.535." *McFarland*, 189 Wn.2d at 53; *see also In re Pers. Restraint of

Mulholland*, 161 Wn.2d 322, 327-31, 166 P.3d 677 (2007).

Here, the trial court imposed an exceptional sentence below the standard range on both

attempted first degree murder counts: 280 months for each count, running concurrently. Had the

trial court applied RCW 9.94A.589(1)(b) to run the sentences for each count consecutively, the

trial court would have been required to zero out Smith's offender score on the second count. But

in the court's discretion, it ran the sentences concurrently. Therefore, RCW 9.94A.589(1)(b) no

longer applied. Accordingly, we hold the trial court did not abuse its discretion in failing to zero out Smith's offender score on the second attempted first degree murder count.

    2.    Indefinite Term of Community Custody

Smith asserts, and the State concedes, that the trial court erred in imposing an indefinite term of community custody between 24 and 48 months on the two counts of attempted first degree murder. We agree.

At the time Smith was originally sentenced in 2004, former RCW 9.94A.715 (2003) required the trial court to sentence the offender "to community custody for the . . . range established under RCW 9.94A.850 or up to the period of earned release awarded . . . , whichever is longer." Former RCW 9.94A.715(1). Under former RCW 9.94A.850 (2002) and WAC 437-20-010, serious violent offenses such as attempted first degree murder had a community custody range of 24 to 48 months.

But former RCW 9.94A.715 was repealed in 2009, LAWS OF 2009, ch. 28, § 42, and former RCW 9.94A.850 was repealed in 2011. LAWS OF 2011, 1st Spec. Sess., ch. 40, § 39. And the legislature amended RCW 9.94A.701 to require fixed terms of community custody based on the offense committed. LAWS OF 2009, ch. 375, § 5; *see also State v. Bruch*, 182 Wn.2d 854, 861, 346 P.3d 724 (2015). Under the current version of RCW 9.94A.701, if the trial court sentences an offender for a "serious violent offense," the court also must "sentence the offender to community custody for three years." RCW 9.94A.701(1)(b).

The legislature expressly stated that these amendments would apply "retroactively and prospectively regardless of whether the offender is . . . currently incarcerated with a term of community custody . . . or sentenced after the effective date of this section." LAWS OF 2009, ch. 375, § 20. Here, Smith's resentencing occurred after RCW 9.94A.701 was amended to require a

fixed term of three years of community custody for serious violent offenses, but the trial court imposed 24 to 48 months. Smith was entitled to application of RCW 9.94A.701 at resentencing. Accordingly, we hold the trial court erred in imposing the indefinite term of community custody.

3.    Imposition of Crime Victim Penalty Assessment and Restitution

Smith asserts that the trial court erred in imposing the crime victim penalty assessment and restitution without first conducting an individualized inquiry of his ability to pay. We disagree.

In 2018, the legislature amended certain LFO statutes. LAWS OF 2018, ch. 269. The crime victim penalty assessment authorized under RCW 7.68.035(1) remains a mandatory LFO after the 2018 amendments. *State v. Catling*, 193 Wn.2d 252, 259-60, 438 P.3d 1174 (2019). In fact, RCW 9.94A.760(1) now expressly provides that an offender's indigence is *not* grounds for failing to impose the crime victim penalty assessment. Therefore, the trial court did not err in imposing the crime victim penalty assessment without inquiring into Smith's ability to pay.

Regarding restitution, under RCW 9.94A.753(5)[5], "[r]estitution *shall be ordered* whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." (Emphasis added). And RCW 9.94A.753(4) states, "The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." Here, Smith was convicted of offenses which resulted in injury to Fonder. Therefore, the trial court did not err in imposing restitution without inquiring into Smith's ability to pay.

---

[5] RCW 9.94A.753 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 9.94A.753.

## CONCLUSION

We affirm Smith's sentence, but we remand for the trial court to strike the indefinite term of community custody on the two counts of attempted first degree murder from the judgment and sentence and to impose three years of community custody on those counts.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
GLASGOW, J.

_____
CRUSER, J.