# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  60170-2-II |
| Respondent, | |
| v. | |
| HANS HARLAN HALE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Following a resentencing hearing pursuant to *State v. Blake*,[1] Hans Harlan Hale appeals his sentence, arguing that the resentencing court erroneously believed it was bound by a joint sentencing recommendation and failed to exercise discretion when it re-imposed a high-end standard range sentence.  Hale also argues that he received ineffective assistance of counsel when his counsel allegedly failed to correct the resentencing court's erroneous belief and that had counsel done so, Hale would likely have received a lesser sentence.

Because the record shows that the resentencing court did not hold a mistaken belief and that it properly exercised discretion when resentencing Hale, we hold that the resentencing court did not abuse its discretion when it re-imposed a sentence at the high-end of the standard sentencing range.  Further, because the resentencing court properly exercised its discretion, Hale cannot establish ineffective assistance of counsel.  Accordingly, we affirm Hale's sentence.

---

[1]  197 Wn.2d 170, 481 P.3d 521 (2021).

FACTS

A.     BACKGROUND

In October 1991, the State charged Hale with two counts of aggravated first degree murder, burglary, assault, and possession of stolen property. Hale had planned, with others, to break into a residence in the hopes of robbing "a large amount of cash and drugs." Clerk's Papers (CP) at 6. As part of the plan, Hale intended to kill the inhabitants "to leave no witnesses." CP at 6. During the break-in, Hale and his co-conspirators bound the two victims with rope and duct tape. Hale then slit the throat of one victim and shot the other victim in the head with a shotgun. Hale was 22 years old at the time.

Based on the nature of the charges, Hale was subject to the death penalty. Ultimately, the State and Hale negotiated a plea agreement. The terms of the plea agreement provided that in exchange for Hale's cooperation and testimony against the others involved in the incident, the State would amend the charges to only two counts of first degree murder, which effectively removed the death penalty. The plea agreement stated in part:

> If the defendant fully cooperates as heretofore set forth, the State will, in exchange for the defendant's offer to plead guilty, amend this information to charge the defendant with two counts of Murder in the First Degree, with a sentencing range of 46 years to 61 1/3 years. The State will recommend a sentence of 61 1/3 years with credit for time served.
>
> . . . All parties understand that the State will tolerate no deception or lack of cooperation from the defendant. If the defendant's information or testimony proves to be untruthful, regardless of whether the untruthfulness helps or hurts the State's cases, this agreement will be considered breached and the defendant will be prosecuted as presently charged.

CP at 191-92.

Hale also submitted a guilty plea statement that stated:

8. I MAKE THIS PLEA FREELY AND VOLUNTARILY.

. . . .

11. I have been informed and fully understand that the Prosecuting Attorney will make the following recommendation to the court: High end of the standard range (736 months); credit for time served . . . .

12. I have been informed and fully understand that the standard sentencing range is based on the crime charged and my criminal history. . . . I fully understand that if criminal history in addition to that listed . . . is discovered, the standard sentence range may increase. Even so, I fully understand that my plea of guilty to this charge is binding upon me if accepted by the court, and I cannot change my mind without court approval if additional criminal history is discovered and the standard sentence range and the Prosecuting Attorney's recommendation increases . . . .

13. I have been informed and fully understand that the court does not have to follow anyone's recommendation as to sentence. I have been fully informed and fully understand that the court must impose a sentence within the standard sentence range unless the court finds substantial and compelling reasons not to do so. If the court goes outside the standard sentence range, either I or the state can appeal that sentence. If the sentence is within the standard sentence range, no one can appeal the sentence.

CP at 9-10 (boldface omitted).

Based on Hale's criminal history, he had an offender score of 6. One of Hale's prior convictions was for unlawful possession of a controlled substance (UPCS). The trial court sentenced Hale to 736 months of confinement, the high end of the standard range.

B.    RESENTENCING

1.    Motion Pursuant to *Blake*

In February 2024, Hale filed a motion for relief from judgment and memorandum in support of resentencing pursuant to *Blake*.[2] In the motion, Hale requested an exceptional

---

[2] *See generally* 197 Wn.2d at 195 (holding that RCW 69.50.4013, Washington's drug possession statute, is unconstitutional).

downward sentence "in consideration of his relative youth" at the time he committed his crimes,

citing to *State v. O'Dell*.[3] CP at 38. In the alternative, Hale requested an exceptional downward

sentence based on the "general disproportionality of his present sentence," a principle discussed

in *In re Personal Restraint of Mulholland*.[4] CP at 38. Hale submitted several documents in support

of his motion, including a forensic psychological evaluation, support letters, and program

certificates.

The State filed a resentencing memorandum. The State acknowledged Hale's entitlement

to *Blake* relief which would result in an updated offender score and sentence range. However, the

State requested the resentencing court to re-impose the high end standard range sentences for both

of Hale's counts, to run consecutively. In the facts section of its motion, the State wrote:

> This case resolved by way of a plea agreement in which . . . Hale agreed to
> give information regarding [others'] involvement in the case. [Hale] agreed to
> provide information in exchange for reduced charges and the dismissal of other
> charges. The *joint sentencing recommendation* was for [the] high end of both
> Count I and Count II, to run consecutive. **(EXHIBIT B).** [Hale] was sentenced on
> December 10, 1992 and the court followed the *jointly recommended sentence*.

CP at 175 (emphasis added). Exhibit B of the State's memorandum was the plea agreement.

The State further asserted:

> The State also makes a point that this was a negotiated resolution in which Hale got
> a *significant* reduction in the number of charges and a reduction from two
> mandatory [life without parole] sentence[s] for Aggravated Murder in the First
> degree, as well as a dismissal of Burglary in the 1st degree and an Assault in the
> Frist [sic] Degree conviction. Hale is now back before the court violating every
> tenant of a plea deal he negotiated. Given the age of the case, the State is in the
> position where it has no remedy for this breach beyond asking the court to impose

---

[3]  183 Wn.2d 680, 698-99, 358 P.3d 359 (2015) (holding that a "defendant's youthfulness can support an exceptional sentence below the standard range applicable").

[4]  161 Wn.2d 322, 166 P.3d 677 (2007).

the high end of the range for both counts and run them consecutively, just as Hale and the State negotiated.

CP at 176-77 (emphasis in original). The State included other exhibits in support of its memorandum, including a copy of the presentence investigation from 1992, infraction reports from Hale's time in confinement, and inmate letters urging against Hale's early release.

2.      Resentencing Hearing

The resentencing hearing was held in March 2024. The judge noted he was not the original sentencing judge. Hale confirmed that he was comfortable with proceeding.

During the hearing, the State argued that following the vacation of Hale's UPCS conviction, his offender score was now 5. Accordingly, Hale's standard sentencing range for Count I was 291-388 months and his standard sentencing range for Count II was 240-320 months.

As it did in its memorandum, the State argued that Hale's request for an exceptional downward sentence was a violation of his plea agreement:

> The defendant took a plea deal in order to name two unnamed individuals who had been co-defendant[s] in this matter and took a plea deal in which all counts beyond Count 1 and 2 were dismissed, and Count 1 and Count 2 were amended down from Aggravated Murder in the First Degree, which has mandatory life without the possibility of parole to the count of Murder in the First Degree, with the idea that the defendant and he did proffer and got the two other co-defendants found in the case, Your Honor.
>
> I say this, Your Honor, because we're now before the Court over 30 years later, and the defendant is reneging on the very tenet of this plea. And given the age of the case, that State has zero recourse beyond to ask the Court to hold the defendant to the deal in principle with the new score range.

Verbatim Rep. of Proc. (VRP) at 5-6. The State further argued that the only reason Hale was before the court for resentencing was because of *Blake*; youthful offender cases did not apply, nor

did *O'Dell* because Hale was a primary instigator and planner of the crimes; and *Mulholland* was inappropriate given the severity of Hale's acts.

Hale's counsel agreed with the State on the offender score and sentence ranges. Hale's counsel noted that the plea agreement was "predicated on . . . two false assumptions": that Hale had a higher offender score and that the death penalty was in play. VRP at 15. Accordingly, Hale's counsel requested the sentencing court to consider an exceptional sentence based on youthfulness. Hale's counsel pointed to Hale's difficult upbringing and noted that other, older individuals were also involved in the crime.

The resentencing court acknowledged the involvement of other defendants in relation to Hale's plea negotiations: "Wasn't the whole purpose of this plea though in recognition of the fact that there were other people involved, and there was a supplemental declaration indicating that in fact someone else had been sort of, hey, it's her idea and then the fact appears to be the case?" VRP at 14.

Hale's counsel then argued "[p]urely as an alternative remedy," the resentencing court should consider a downward departure from the standard range pursuant to *Mulholland*. VRP at 17. He further noted that Hale had made considerable rehabilitative efforts while in prison.

Hale exercised his right of allocution, noting that he was sentenced two years before the internet came into existence. A close friend of Hale's also spoke in support of Hale.

The resentencing court then addressed the parties:

> Mr. Hale, I have heard what you've said. I heard what [your friend] had to say. I have looked at the file, and I have looked at the file as it existed in 1991 and 1992. And I looked at the things there you have done certainly over the last 10 years and maybe 12 or 13 years by your calculation.

6

This was in my view a legitimately charged aggravated murder. The prosecutor's office filed notice early on that they intended to consider seeking the death penalty. They extended that notice . . . [t]hree, four, five, six times in order to facilitate the plea that you were offered and agreed to answer into knowing that there were two other people involved in this offense, knowing that you were getting the benefit of what you bargained for. The death penalty in my view was a legitimate concern.

. . . .

So death penalty was certainly a consideration. The death penalty was removed as an option with this plea agreement. The plea agreement allowed you to plead guilty to two first murders. I will just note that [your counsel] is correct. There were two things that have changed since the time of the plea that the judge didn't have the opportunity to review. One is the death penalty is now . . . [u]nconstitutional. And two, unlawful possession of a controlled substance as a felony crime has also been determined to be unconstitutional. I submit there are three things that were not available at the time of your original sentencing. Two years, as you indicated, the internet had not been created yet. Neither had . . . hard time for armed crime. It seems to me that at the time of this sentencing, had it been two years later, we're talking about things that didn't exist then that do exist now, your sentence could easily have been by agreement anywhere from 9 to 16 years longer than it was as a standard range sentence. And that additional 9 to 16 years would be flat time without the opportunity to earn any good time no matter how acceptable your behavior was in the Department of Corrections.

I'm going to impose a sentence that reflects the original plea bargain by the standard sentence range to run consecutive. 388 [months] for Count 1, plus 320 [months] in Count 2 for total of 708, I believe.

VRP at 35-37. The resentencing court entered a judgment and sentence consistent with its oral ruling.

Hale appeals.

ANALYSIS

Hale argues that the sentencing court erred when it re-imposed the high end of the standard sentencing range for both counts based on an "erroneous belief" that it was bound by the plea agreement as a "joint recommendation." Br. of Appellant at 9. Hale also argues he received

7

ineffective assistance of counsel when his counsel failed to correct the State's misrepresentation that the plea agreement constituted a joint recommendation for a sentence at the high end of the standard sentencing range. Hale asserts remand is warranted and that resentencing should occur before a different judge. We disagree.

A.      SENTENCING

1.      Legal Principles

Generally, a criminal defendant may not appeal a sentence within the standard sentencing range. RCW 9.94A.585(1); *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). However, a defendant may challenge "the underlying legal determinations by which the sentencing court reaches its decision," and "every defendant is entitled to have an exceptional sentence actually considered." *McFarland*, 189 Wn.2d at 56. A sentencing court may impose a sentence below the standard sentencing range if it finds "'substantial and compelling' mitigating circumstances, 'established by a preponderance of the evidence.'" *State v. McFarland*, 18 Wn. App. 2d 528, 538, 492 P.3d 829 (2021) (quoting RCW 9.94A.535).

"A trial court abuses discretion when 'it refuses categorically to impose an exceptional sentence below the standard range under any circumstances.'" *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (quoting *State v. Garcia-Martinez,* 88 Wn. App. 322, 330, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998)). The failure to exercise discretion constitutes reversible error. *O'Dell*, 183 Wn.2d at 697.

2.      No Abuse of Discretion

Hale argues that the State "falsely claimed Hale was breaching the plea agreement" by making his request for an exceptional downward sentence and that the resentencing court's oral

ruling "shows that it accepted the prosecutor's misrepresentation." Br. of Appellant at 11. We agree that the State misrepresented that the sentencing recommendation in the plea agreement was a joint recommendation, but we disagree that the resentencing court accepted the State's misrepresentation.

Here, the record shows that the State advanced an argument that Hale agreed to a "joint sentencing recommendation" and that he allegedly breached that agreement by requesting an exceptional downward sentence. CP at 175. The State pointed to the plea agreement as evidence of the joint recommendation.

However, the plea agreement merely stated that the State intended to recommend a sentence at the high end of the standard sentencing range. Hale's guilty plea statement acknowledged the State's intention with regard to the sentencing recommendation. Nowhere in either document is there any reference to the fact that the high end of the standard sentencing range was a jointly recommended sentence. In this regard, we agree that the State misrepresented the plea agreement at the resentencing hearing.[5]

Hale argues that because the resentencing court referenced the original plea agreement, "it accepted the prosecutor's misrepresentation" when it resentenced Hale to the high end of the standard sentencing range. Br. of Appellant at 11. Hale's contention is belied by the record.

The resentencing court made a clear record of the basis for its decision. The court acknowledged Hale's allocution and Hale's friend's support statement. And the court explicitly stated that it had reviewed Hale's file, including documents from the 1990's and more recent

---

[5] We note that the State failed to address Hale's contention regarding the misrepresentation in its brief nor does the State now argue on appeal that Hale violated the terms of his plea agreement.

documents demonstrating Hale's rehabilitative efforts. The court also noted the circumstances and context for Hale's charges and the plea agreement reached by the parties. The resentencing court stated:

> There were two things that have changed since the time of the plea that the judge didn't have the opportunity to review. One is the death penalty is now . . . [u]nconstitutional. And two, unlawful possession of a controlled substance as a felony crime has also been determined to be unconstitutional. I submit there are three things that were not available at the time of your original sentencing. Two years, as you indicated, the internet had not been created yet. Neither had . . . hard time for armed crime. It seems to me that at the time of this sentencing, had it been two years later, we're talking about things that didn't exist then that do exist now, your sentence could easily have been by agreement anywhere from 9 to 16 years longer than it was as a standard range sentence. And that additional 9 to 16 years would be flat time without the opportunity to earn any good time no matter how acceptable your behavior was in the Department of Corrections.

VRP at 36-37.

While the resentencing court referenced the original plea agreement, at no point did the resentencing court allude to the State's representation of the plea agreement nor did the resentencing court state or imply that it was bound by some prior joint agreement between the parties. Instead, the record shows that the resentencing court focused on the purpose of the plea agreement when it inquired, "Wasn't the whole purpose of this plea though in recognition of the fact that there were other people involved." VRP at 14.

Moreover, the fact that the resentencing court acknowledged Hale's statement, reviewed Hale's file, and then also noted that had Hale committed the crimes two years later, he may have been subject to an even longer sentence, all demonstrate that the resentencing court did not categorically refuse to exercise discretion. Instead, the record shows that the resentencing court did exercise discretion through its consideration of all the circumstances it discussed. Thus,

10

because the resentencing court did not fail to exercise its discretion based on a misrepresentation by the State, there was no abuse of discretion.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

1.     Legal Principles

Criminal defendants are guaranteed the right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on a claim of ineffective assistance, a defendant must "show both (1) deficient performance and (2) resulting prejudice." *Estes*, 188 Wn.2d at 457-58. We review claims of ineffective assistance of counsel de novo. *Id.* at 457.

"Deficient performance is performance falling 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). Courts indulge a strong presumption that counsel's performance was reasonable. *Estes*, 188 Wn.2d at 458. Prejudice occurs when there is a reasonable probability that but for the deficient performance, the outcome of the proceedings would have been different. *Id.* "If either element of the test is not satisfied, the inquiry ends." *Kyllo*, 166 Wn.2d at 862.

2.     No Ineffective Assistance of Counsel

Hale argues that he received ineffective assistance of counsel when his counsel failed to correct the State's claim that Hale was bound by a joint sentencing recommendation. As a result, Hale asserts "there is a reasonable probability [he] would have received a lesser sentence." Br. of Appellant at 13. We disagree.

Hale's argument is premised on the assumption that the resentencing court held the "mistaken belief" that Hale was "required to recommend the same sentence as the prosecution." Br. of Appellant at 15, 17. For the reasons discussed above, the record shows that the resentencing court held no such belief. Accordingly, even if Hale's counsel's performance was deficient, because the resentencing court properly exercised its discretion and *did not* rely on the State's misrepresentation, Hale cannot establish prejudice. *Estes*, 188 Wn.2d at 458; *Kyllo*, 166 Wn.2d at 862. Hale's ineffective assistance of counsel claim fails.[6]

CONCLUSION

We affirm Hale's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.

---

[6] Hale requested a different resentencing judge in the event we remanded the case for resentencing. Because we affirm the resentencing court, we do not address Hale's request for a different judge on remand.