# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59093-0-II |
| Respondent, | |
| v. | |
| JOSEPH CARL GIOIOSA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Joseph Gioiosa appeals his convictions for first degree murder, first degree attempted murder, first degree assault, drive-by shooting, and unlawful possession of a firearm or, in the alternative, his sentence. Gioiosa argues that (1) the jury instruction on accomplice liability was constitutionally deficient, (2) the trial court abused its discretion by denying his request for expert services, (3) the trial court erred by including Gioiosa's juvenile convictions in his offender score, and (4) Gioiosa is entitled to resentencing because the trial court failed to recognize its discretion to run the sentences for Gioiosa's multiple serious violent offenses concurrently as an exceptional sentence.

We conclude that (1) the challenged jury instruction correctly stated the law on accomplice liability, (2) the trial court did not abuse its discretion by denying Gioiosa's request for expert services because Gioiosa never made such a request, (3) the trial court correctly included Gioiosa's juvenile convictions in his offender score in accordance with the law in effect at the time of the offenses, and (4) Gioiosa is not entitled to resentencing because this error, if any, was invited and

not preserved for review, and the record does not show that the trial court was unaware of its discretion to run Gioiosa's serious violent offense sentences concurrently by declaring an exceptional sentence downward.

FACTS

In the early hours of September 28, 2020, Joseph Gioiosa and Justin Coleman went to a party to shoot rival gang member Trevon Richard. Coleman had recently been attacked by Richard and members of his gang. When Coleman and Gioiosa arrived, Richard was standing outside of a vehicle occupied by Damoni Nelson and Charles Hickman, high school students, unaffiliated with a gang. A bullet, shot from inside Gioiosa and Coleman's vehicle, went through the front windshield and killed Nelson. The State charged Gioiosa with first degree murder, second degree murder, attempted first degree murder, first degree assault, drive-by shooting, and unlawful possession of a firearm. Coleman pleaded guilty to second degree murder with a firearm enhancement. Gioiosa's case proceeded to trial on a theory of accomplice liability.

During pretrial proceedings, the trial court granted Gioiosa's request to represent himself. The trial court granted Gioiosa a two-month continuance to prepare for trial. At the next status hearing, Gioiosa requested a 90-day continuance while he waited for the Department of Assigned Counsel (DAC) to respond to his request for a ballistics expert. Gioiosa explained:

> So I've requested a ballistics expert since I was made aware of the State's claim that I was the shooter in this case from September 28, 2020. I've written -- I've written a letter to DAC and also to Your Honor, but the letter to you, [your honor], was sent back to me because I didn't follow the correct format. But I still haven't heard anything back from DAC yet about this expert, which I think is crucial for my defense in this case. . . .
>
> So I was just asking for 90 days to kind of get everything together and hopefully get this expert from DAC.

8 Verbatim Rep. of Proc. (VRP) at 364.

The trial court continued the trial one week, rather than 90 days. The trial court explained that it was declining to grant a lengthier continuance because it had already continued the trial for two months so that Gioiosa could prepare. The trial court also expressed its view that

> [t]he issue of the ballistics expert, . . . that has been known for a while . . . I'm not sure that that is as crucial as Mr. Gioiosa may think in determining which side of the vehicle the shots were fired from. So I'm not inclined to continue this for a lengthy period of time to allow that to be explored any further.

*Id.* at 368-69.

The trial court later reappointed counsel at Gioiosa's request.

At trial, defense counsel objected to the use of the Washington Pattern Jury Instruction on accomplice liability. The jury instruction read:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
>
> . . . .
>
> (2) aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (CP) at 293.

Defense counsel argued that the last two sentences of the instruction conflicted with each other and that the second to last sentence incorrectly implied that a defendant can be held liable as

an accomplice based on mere presence and knowledge. The trial court overruled the objection, explaining that the proposed instruction "mirrors the statutory language" and "appropriately informs the jury that the State must prove more than the defendant was a knowing observer of a crime. . . . You've got to be ready to assist." 23 VRP at 1957-58.

The State referenced this jury instruction in closing, stating, "So a person can be merely present and not do anything with knowledge of the crime that the principal's doing--." *Id.* at 1986. Then defense counsel interjected with an objection. The trial court allowed the State to finish its statement. The State then reiterated the language from the jury instruction that " 'more than mere presence and knowledge of criminal activity of another must be shown to establish that a person is an accomplice.' " *Id.* at 1987.

The jury convicted Gioiosa of first degree murder with a firearm enhancement, second degree murder with a firearm enhancement, first degree attempted murder with a firearm enhancement, and first degree assault with a firearm enhancement, drive-by shooting, and unlawful possession of a firearm.

At sentencing, Gioiosa argued that his juvenile convictions should not be included in his offender score because an amendment to RCW 9.94A.525, which went into effect after the offenses but before sentencing, directs the court not to include such convictions. The State argued that Gioiosa's juvenile offenses should be included in his offender score because "the date of the crime determines what law was in effect, and the date of the crime in this case by over two years predates the statute that changed the prior juvenile offense issue." 25 VRP at 2080. The trial court referenced RCW 10.01.040 and concluded that "because the date of [the] incident in this case was

. . . before this law came into effect" Gioiosa's juvenile offenses "would each count in his offender score." *Id.* at 2083-84.

The State recommended a sentence at the low end of the standard range–here, a total of 971 months with 36 months of community custody following release. The State emphasized the numerous individuals who were harmed by the incident: the 17-year-old who was shot and killed, his grieving mother, the couple whose car was shot and impounded as evidence. The State further emphasized its view that Gioiosa did not take responsibility for his actions. The State continued:

> But he's guilty, Your Honor, and the sentencing guidelines are troublesome and the legal issues that are created by this mandatory consecutive nature and the doubler [of] the firearms and they have to be consecutive. But we do what we believe is right, and we don't make the law. And the defendant obviously is going to suffer the consequences of what he did.
>
> So we're recommending low end, Your Honor, which is 900-and-something months.

*Id.* at 2105. Gioiosa's counsel also recommended a low end standard range sentence.

The trial court imposed a low end standard range sentence. The trial court emphasized that the victim had "his whole life ahead of him" and that his friend, who witnessed the murder, is "going to have to live with [that] for the rest of his life." *Id.* at 2107-08. The trial court also mentioned that "Counts I, III and IV are all serious violent offenses" such that "[u]nder the law, they have to run consecutive to each other" and that Gioiosa "[was not] a young man" when the crime took place before concluding that it did not "see a basis for doing anything other than sentencing [Gioiosa] to the low end" on Counts I, III, an IV "to run consecutively with the firearm sentencing enhancements, which also run consecutively." *Id.* at 2106-08. Gioiosa appeals his convictions and, in the alternative, his sentence.

DISCUSSION

I. ACCOMPLICE LIABILITY INSTRUCTION

Gioiosa contends that the accomplice liability instruction was constitutionally deficient because it was ambiguous with regard to whether mere presence and knowledge that a crime is going to occur constituted "aiding." Br. of Appellant at 10. The State contends that the jury instruction, taken as a whole, clearly states that "aiding" requires something more than mere presence and knowledge that a crime is going to occur. Br. of Resp't at 26. We agree with the State.

A. Legal Principles

Due process requirements are met when a trial court instructs the jury on all elements of an offense and that, unless each element is established beyond a reasonable doubt, the defendant must be acquitted. *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988). Jury instructions are adequate if they do not mislead the jury or misstate the law. State v. Stevens, 158 Wn.2d 304, 308, 143 P.3d 817 (2006).

Where the adequacy of specific jury instructions is challenged, "we review the challenged instructions de novo in the context of the instructions as a whole." *State v. Imokawa*, 194 Wn.2d 391, 396, 450 P.3d 159 (2019). The "jury instructions 'must more than adequately convey the law. They must make the relevant legal standard manifestly apparent to the average juror.'" *State v. Borsheim*, 140 Wn. App. 357, 366, 165 P.3d 417 (2007) (internal quotation marks omitted) (quoting *State v. Watkins*, 136 Wn. App. 240, 241, 148 P.3d 1112 (2006)). Jury instructions are adequate "when, taken as a whole, they properly inform the jury of the applicable law, are not

misleading, and permit the defendant to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999).

> Under RCW 9A.08.020(3):

> A person is an accomplice of another person in the commission of a crime if:
>      (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> . . . .
>      (ii) Aids or agrees to aid such other person in planning or committing it[.]

"A person is guilty of a crime if it is committed by the conduct of another person for which" he is an accomplice. RCW 9A.08.020(1)-(2). Presence at the scene of a crime and knowledge that a crime is going to occur may be sufficient to support accomplice liability if the person is "ready to assist" in the commission of the crime. *In re Welfare of Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979). Mere knowledge and presence alone are not enough to satisfy accomplice liability without proof at least of the participant's readiness to assist. *Id.*

B. Analysis

Gioiosa contends that the language " '[a] person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime' " incorrectly implies that mere presence and knowledge that a crime is going to occur is sufficient to support a conclusion that the defendant was "aiding" in the commission of a crime. Br. of Appellant at 10 (quoting 23 VRP at 1957). We disagree. This language unambiguously requires that a person must also be "ready to assist" in the commission of the crime in order to be held liable as an accomplice. Even if this language was ambiguous, we consider whether the jury instructions *as a whole* accurately convey the law. *Tili*, 139 Wn.2d at 126. Any ambiguity was resolved by the following sentence which clarified "more than mere presence and knowledge of the criminal activity of another must

be shown to establish that a person present is an accomplice." CP at 293. The instruction correctly stated the law. Accordingly, no error was committed in issuing the instruction.[1]

## II. CrR 3.1(f) Request for Expert Services

Gioiosa argues that the trial court abused its discretion by denying his CrR 3.1(f) request for expert services. The State contends that the trial court did not abuse its discretion because Gioiosa never requested that the trial court authorize expert services. We agree with the State.

"Whether expert services are necessary for an indigent defendant's adequate defense is within the discretion of the trial court and its decision will not be overturned absent an abuse of discretion." *State v. French*, 157 Wn.2d 593, 607, 141 P.3d 54 (2006). The trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *State v. Dixon*, 159 Wn.2d 65, 75-76, 147 P.3d 991 (2006).

Here, Gioiosa contends that the trial court abused its discretion by denying his request for expert services, but there is no evidence in the record that Gioiosa ever made such a request. Gioiosa refers to an instance where Gioiosa, acting pro se, requested a continuance of the trial date while he waited for DAC to respond to his request for an expert:

> So I've requested a ballistics expert since I was made aware of the State's claim that I was the shooter in this case from September 28, 2020. I've written -- I've written a letter to DAC and also to Your Honor, but the letter to you, [Your Honor], was sent back to me because I didn't follow the correct format. But I still haven't heard anything back from DAC yet about this expert, which I think is crucial for my defense in this case. . . .

---

[1] Appellate counsel, in support of his argument that the instruction misstates the law, includes a truncated quotation from the State's closing argument that misrepresents what the prosecutor said. Although the quotation technically includes actual words spoken by the prosecutor, significant portions of what the prosecutor said are missing, leading to a potential misinterpretation of the State's argument. There are 224 words spoken by the prosecutor on this particular point, and counsel included 22 percent of them. This is inappropriate.

So I was just asking for 90 days to kind of get everything together and hopefully get this expert from DAC.

8 VRP at 364. The trial court continued the trial for one week rather than 90 days with the understanding that the trial date may have to be reassessed if Gioiosa's standby counsel was in trial in another matter. The trial court explained that it had already granted Gioiosa's request for a two-month continuance when the court authorized him to represent himself. The trial court explained that another lengthy continuance was not warranted because

> The issue of the ballistics expert, as has been indicated, that has been known for a while, the issue. I'm not sure that that is as crucial as Mr. Gioiosa may think in determining which side of the vehicle the shots were fired from. So I'm not inclined to continue this for a lengthy period of time to allow that to be explored any further than what you may be able to do between now and the 18th.

*Id.* at 368-69. Contrary to his claim in this appeal, Gioiosa never made a CrR 3.1(f) request for expert services. Rather, he made a request for a *continuance* so that he could continue seeking assistance in getting an expert from the DAC. Gioiosa states in his brief that the "trial court denied the motion,"[2] implying that the motion in question was a CrR 3.1(f) motion for an expert. Because the motion was actually a motion to continue pursuant to CrR 3.3, the partial denial of which Gioiosa does not challenge, this claim of error fails.

### III. OFFENDER SCORE

Gioiosa argues that an amendment to RCW 9.94A.525, that went into effect after his offenses but before he was sentenced, applies to his case on appeal such that he should be resentenced without the inclusion of his juvenile convictions in his offender score. The State

---

[2] Br. of Appellant at 19.

contends that the trial court correctly applied the law in effect at the time of the offense. We agree with the State.

Effective July 23, 2023, the legislature amended RCW 9.94A.525, the statute that governs calculation of an offender score, to eliminate inclusion of most juvenile adjudications from the calculation of an offender score. LAWS OF 2023, ch. 415, §2.

Sentences imposed under the Sentencing Reform Act of 1981, ch. 9.94A RCW "shall be determined in accordance with the law in effect *when the current offense was committed*" unless otherwise provided. RCW 9.94A.345 (emphasis added).[3] In addition, RCW 10.01.040 provides:

> Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

This provision, known as the savings clause, applies to "substantive changes in the law," which includes changes to "the punishment for offenses or the type of punishments possible." *State v. Jenks*, 197 Wn.2d 708, 721-22, 487 P.3d 482 (2021). It does not apply to procedural amendments to the SRA. *Id*. An amendment to a penal statute must fairly convey the intent to avoid application of the savings clause for the amendment to apply to pending prosecutions for crimes committed before the amendment's effective date. *Id.* at 720.

---

[3] RCW 9.94A.345 was amended in 2021. Because these amendments do not impact our analysis, we cite to the current version of the statute. *See* LAWS OF 2021, ch. 286, § 2; LAWS OF 2021, ch. 141, § 2

Because the amendments to RCW 9.94A.525(1)(b) affect the calculation of an offender score they are a procedural change in the law and, thus, pursuant to the savings clause they apply only to offenses that occurred after the effective date unless the amendment fairly conveys a contrary intent. *See id.* at 721. We have repeatedly held that the legislature did not include such contrary intent and that RCW 9.94A.345 and RCW 10.01.040 require that Gioiosa's offender score be calculated by the law in effect at the time of his offense. *See id*. at 716, 721-22; *State v. Solomon Gibson*, 33 Wn. App. 2d 618, 622-23, 563 P.3d 1079, *review denied*, 4 Wn.3d 1035 (2025); *State v. Tester*, 30 Wn. App. 2d 650, 656, 546 P.3d 94, *review denied*, 3 Wn.3d 1019 (2024); *State v. Troutman*, 30 Wn. App. 2d 592, 599-600, 546 P.3d 458, *review denied*, 3 Wn.3d 1016 (2024).

Gioiosa argues that the amendment's use of the term "may not" in the phrase "[f]or the purposes of this section, adjudications of guilt pursuant to Title 13 RCW which are not murder in the first or second degree or class A felony sex offenses *may not* be included in the offender score" fairly conveys that the legislature intended to exclude the savings clause. RCW 9.94A.525(1)(b) (emphasis added). Gioiosa relies on a single case, *State v. Grant*, 89 Wn.2d 678, 684, 575 P.2d 210 (1978). In *Grant*, our supreme court held that language stating that " 'intoxicated persons may not be subjected to criminal prosecution solely because of their consumption of alcoholic beverages' [was] an express declaration of a legislative intention that no person shall go to trial on such a charge after the effective date of the act." *Id.* (quoting former RCW 70.96A.010 (1972), *repealed by* LAWS OF 2016, Spec. Sess., ch. 29, § 601). The State responds that "*Grant* involved individuals subjected to *criminal prosecution* after the statute's effective date as opposed to dealing with 'the proper classification of the underlying violation.' " Br. of Resp't at 54.

Gioiosa contends that the legislature's use of the words "may not" in RCW 9.94A.525 conveyed the legislature's intent that the amendment apply to all sentencings that occur after the amendment's effective date. But the amendment at issue here is more comparable to the statutory amendment at issue in *Jenks*. In *Jenks*, our supreme court held that an amendment that did nothing more than remove second degree robbery from the list of offenses that qualify an individual as a persistent offender "contrasts clearly" with cases where an amendment excluded the savings clause. 197 Wn.2d at 720. Here, the amendment to RCW 9.94A.525 merely excludes certain prior convictions from the offender score. The amendment's language does not fairly convey that the legislature intended to avoid application of the savings clause.

Gioiosa also implies that the amendment ought to apply retroactively because it is remedial. Again, we have repeatedly rejected this argument. *Tester*, 30 Wn. App. 2d at 658-59; *Troutman*, 30 Wn. App. 2d at 598 n.6.

Gioiosa contends that his juvenile adjudications should not have been included in his offender score because the amendment applied prospectively from its effective date. Again, we have explained that under these circumstances, prospective application of the legislative amendments directly conflicts with RCW 10.01.040 and RCW 9.94A.345, which require that a sentence is determined based on the law in effect at the time of the offense. The legislature has expressly determined that sentences must be imposed based on the law in effect at the time of the offense unless stated otherwise, and the statutory scheme created by the legislature must be given effect. *Jenks*, 197 Wn.2d at 713. Accordingly, Gioiosa's offender score must be determined based on the law in effect at the time of his offense.

IV. Exceptional Sentence

Gioiosa argues that the sentencing court erred by failing to recognize its discretion to impose an exceptional downward sentence and that remand for resentencing is required under *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007). The State contends that resentencing is not required because the trial court's comments accurately stated the law and the record does not show a possibility that the trial court would have imposed an exceptional sentence had it considered one.

RCW 9.94A.589(1)(b) provides that offenders shall serve consecutive sentences for convictions of two or more serious violent offenses. Notwithstanding this language, a sentencing court has discretion to declare a downward departure exceptional sentence and run these sentences concurrently pursuant to RCW 9.94A.535(1)(g), where a standard range sentence would be "clearly excessive." *Mulholland*, 161 Wn.2d at 331.

Relying on *Mulholland*, and also on *State v. McFarland*, 189 Wn.2d 47, 399 P.3d 1106 (2017), Gioiosa asks us to reverse his sentence because, he contends, the trial court did not recognize its discretion to run Gioiosa's sentences for his serious violent offenses concurrently under RCW 9.94A.535(1)(g). We disagree.

First, Gioiosa did not request an exceptional sentence downward. In fact, the trial court imposed the low end of the standard range, which Gioiosa requested. A trial court does not err by imposing an otherwise legal, standard range sentence that the defendant himself asked the trial court to impose. Where no error is committed, there is no error for this court to correct. This claim is not preserved under RAP 2.5(a)(3). Gioiosa got the low end sentence he requested and did not object to the trial court's adherence to his request. The trial court was not given an opportunity to

share its view on the permissibility of concurrent sentences when given as part of a downward departure because it was not asked to consider such a sentence.

Second, Gioiosa relies primarily on the remarks of *the prosecutor* for his assertion that the trial court did not understand its discretion. Specifically, Gioiosa points to the prosecutor's remark that the " 'sentencing guidelines are troublesome' " but the law required that the counts be sentenced consecutively as evidence that the trial court believed it did not have the discretion to impose concurrent sentences. Br. of Appellant at 37 (quoting 25 VRP at 2105). Gioiosa also points to the trial court's statement that " '[u]nder the law, they have to run consecutive to each other.' " *Id.* (quoting 25 VRP at 2106). We disagree with Gioiosa's interpretation of the record.

Unlike in *McFarland*, the record here does not suggest that the sentencing court misunderstood its discretion to impose an exceptional sentence downward by running the serious violent offense sentences concurrently. The trial court never expressed its view that it did not have the discretion to impose an exceptional sentence if it found that a standard range sentence would be "clearly excessive." And it is a correct statement of the law that serious violent offenses must run consecutively to each other *unless* the court finds both the existence of mitigating circumstances and that substantial and compelling reasons justify a sentence below the standard sentencing range.

These facts stand in contrast with *McFarland* where both the State and defense counsel agreed that the defendant's multiple firearm-related convictions had to be served consecutively, and the trial court stated, " 'I don't have -- apparently [I] don't have much discretion, here. Given the fact that these charges are going to be stacked one on top of another, I don't think -- I don't think [the] high end is called for, here.' " 189 Wn.2d at 51 (alterations in original) (quoting the

14

record). Because the record does not show that the sentencing court misunderstood its discretion to impose an exceptional downward sentence, remand for resentencing is not appropriate.

Even assuming the sentencing court misunderstood its discretion to impose concurrent sentences,[4] the record does not suggest that it would have imposed such a sentence in any event. To the contrary, the sentencing court underscored the youth and promise of the deceased victim, and the lasting impact that witnessing this crime would have on the surviving victim. The trial court also acknowledged that mitigating circumstances did not exist because Gioiosa "[wasn't] a young man" at the time of the offense, noting that he was nearly 30 years old at the time of the offense. 25 VRP at 2108. The trial court ultimately concluded that it did not "see a basis for doing anything other than sentencing [Gioiosa]" to a standard range sentence. *Id.* This stands in contrast with the facts in *McFarland* where the sentencing court equated the defendant's presumed sentence with that imposed for second degree murder and expressed some discomfort with its perceived lack of discretion to impose concurrent sentences. 189 Wn.2d at 51, 58-59. For this reason, remand for resentencing is not warranted.

CONCLUSION

We conclude that (1) the challenged jury instruction correctly stated the law on accomplice liability, (2) the trial court did not abuse its discretion by allegedly denying Gioiosa's request for expert services because Gioiosa never made such a request, (3) the trial court correctly included Gioiosa's juvenile convictions in his offender score in accordance with the law in effect at the time of the offense, and (4) Gioiosa is not entitled to resentencing because this error, if any, was invited

---

[4] We note that our supreme court's case holding that serious violent offense sentences may be run concurrently as part of an exceptional sentence is nearly *two decades* old and we have no reason to assume that the superior court is unaware of this long-settled principle.

and not preserved for review, and the record does not show that the trial court was unaware of its discretion to run Gioiosa's serious violent offense sentences concurrently by declaring an exceptional sentence downward. Accordingly, we affirm Gioiosa's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

PRICE, J.

CHE, J.